Okay, so I think we can start. This is the case of Wells Fargo v. Mahogany Meadows Avenue Trust. Council are ready to proceed. We apologize for the technical difficulties, but let's see if we can proceed. Why don't you go ahead and start, Mr. Jacob. Thank you. Good morning, Judges Murdia, Miller, and Stee. And thank you for going to such great lengths to hear from both of us this morning. We both appreciate it very much. I know I do. Andrew Jacobs for Wells Fargo. In six years of Nevada HOA litigation, the one issue remaining to be decided of significance is whether or not IRS 116 violates the taking clause. It's an issue that has evaded review for six years, an issue this Court almost took a run at a couple of times. I see that Judge Stee is... Okay. Go ahead. Please proceed. Please proceed. Go ahead. Thank you. An issue of importance that has evaded review for six years in the Ninth Circuit is whether or not NRS 116, the HOA statute that eliminates first position liens by virtue of four clauses and tiny HOA liens, is in fact a violation of the Fifth Amendment and of the takings clause. This is an important issue. This Court has already previously declared this statute unconstitutional in 2016. A state law piece of that pertaining to the due process issue was repaired by the Nevada Supreme Court, but there's no state law fix for whether this was taken. We know from 2016, because it is circuit law, that this statute is state action as it affects the elimination of first position mortgages. It was decided... But hasn't Nevada talked about this? Why wouldn't we accept that Nevada has spoken about this in its decision? Because, Judge Merguia, the Nevada Supreme Court is not the last word on the federal constitution. I realize that, but I'm just saying, why is their reasoning false? Their reasoning is faulty because it glosses over all the different components of what makes a taking exist. We see that we do have a property interest. We see that that interest was destroyed. That's conceded in this case. The only issues that the Nevada Supreme Court raised in the Santa Coy Bay case, in which I participated three years ago, is the idea that Nevada would have had to have directly taken the interest. That's just not the Fifth Amendment. That would abrogate all of what eminent domain is. There are a host of situations in which the Fifth Amendment is implicated without the state perforce itself on the property. That just doesn't matter. Counsel, could you explain how your theory applies to tax foreclosures? I don't know the Nevada rule, but my understanding of the general practice is that if you don't pay your property taxes, the county gets a lien, and then they can foreclose on that lien. When they do, that wipes out all the other lien holders, including a bank holding a mortgage. Under your theory, why wouldn't that also be a taking? Because this situation presents an anomalous one in which, unlike the tax context, and unlike the mortgage context, in which you have non-judicial or judicial foreclosure, the entity doing the taking here is essentially a stranger with respect to the subject matter of the transaction. The HOA is not the state. When you enter into a mortgage contract, you are in privity, and everybody knows that you can come back and take that interest. The government, by virtue of the direct taxing relationship, has a level of dignity which is equal to that of a mortgage bank involved in the lien situation. But here, and this was really the weirdness of this statute that the panel grappled with four years ago in Bourne Valley, here you have essentially a commercial and relationship stranger, the HOA, who is coming in out of left field, and is basically foreclosing an extremely tiny lien, which is not entitled to the same dignity of a state tax relationship that everybody knows existed from the start of the relationship. But why, I mean, everybody, if what it turns on is what everybody knew from the beginning of the relationship, everybody knew from the beginning of your relationship, your mortgage, post-dated the existence of the statute, the existence of the HOA. So how does that, I don't see how that distinction helps you. Well, Your Honor, it's really more as if the state of Nevada had passed a law entitling an alien class of entities to take the property of a different class of entities. That's really the best way to look at this. This isn't really like a tax lien because it's a unique statute. There's no other analog to it in American law where one class of commercial stakeholders gets to just come and jump another one and take away their first position lien in this manner. It is a really anomalous statute. But as far as what people knew in the first place, this statute was never used that way from 1991 until after 2010. So the thing that the HOAs like to say and that the Nevada State Court system amplifies, which is, you all knew this, it's just completely, literally fictive. For 20 years, there's no reported case doing this. No one ever did this, and no one knew it was a thing. And so it was a reinvention of the law over 20 years into the statute. It was obviously a serious mistake because the Nevada legislature in its next session went back and said, no, the statute doesn't mean that. We're fixing it. That's just wrong. And so it's basically called the reverse's bull. I mean, I hate to reach back to 1798, Judge Miller. Takings is you don't take A's stuff and give it to B. This statute, in an extremely naked way, is not truly fairly analogous to a tax lien. It does that. It says HOAs, you can just go ahead and have the home. You can have the interest of the bank. And there's really nothing like it in American law. It is sui generis, which makes it harder for me to make my argument. I appreciate it. But have you, I mean, have you made, you're not making the argument here. Have you made it somewhere else that the Nevada Supreme Court decision that interpreted the statute this way somehow violated due process by being an unexpected new interpretation of the statute? We have not argued that the court decision itself does, though I think that is correct. Because of the prominence of notice requirements in the essence of what a due process claim is and because takings operates in a fundamentally different way where notice is not baked into the structure of takings, we simply argued it as a state taking, but it became a taking the way the Nevada Supreme Court surprisingly decided then to interpret it. And it did rob the parties of notice. And, of course, there is a relationship of sorts between takings and due process, though they are distinct judgmental. Why did it take you more than years to challenge this lawsuit to the HOA? We argued this issue in 2015, and Judge Reinhart in a panel with Judge Tashima ordered a brief to the constitutionality. That order was withdrawn with panels in 2015. In 2016, I argued this issue in briefs to the Born Valley panel, which thought it was easier, I suspect, to decide it on the due process ground, and choosing in that case not to reach the takings ground, which I believe was briefed in Born Valley. Since then, we've briefed it a number of times. We had one case that was argued late last year, which the court seemed to address more as an FHA case and not as a takings case. So from my standpoint, I've been trying to manage a portfolio of litigation. I've been trying to throw this issue at the Ninth Circuit for four years. I think it's vitally important and long overdue for decision, Judge. And you don't really contest that Wells Fargo had actual notice of the HOA's foreclosure sale before February 2013, do you? Your Honor, we grant that under Nevada state law, which we don't want to fight our way through about five layers of arguments, that the foreclosure notices are deemed conclusive evidence that they were in fact sent. So for purposes of Nevada law, that's not an issue. But again, and this is all through their briefing, when you're going to take away somebody's property, it really doesn't matter whether there was public notice for 20, 50, or 100 years of the mechanism by which the state may elect to do that. It's just conflating apples and oranges. Notice and you knew it is a due process issue. It is simply not a Fifth Amendment issue, Your Honor. You told me about the time it took you to raise this issue to the circuit. But I guess my question is, why did it take you four years to file the complaint in the case after the foreclosure sale? I apologize, Your Honor. I hadn't caught the question. What happened was there are over 3,000 of these houses subject to this awful situation of HOAs in Nevada. And what happened was we had a lot of them that were not yet in litigation. This circuit declared this statute unconstitutional in August 2016. We went through our portfolio and sought declarations to enforce Bourne Valley. And as you can see, the motion to dismiss the matter below basically said, please ignore Bourne Valley. The court waited a year and then eventually determined the matter against us. But we were trying to get the matter decided when the statute was, in fact, unconstitutional. We believe it still is. If I could please reserve a couple of minutes here. I lost 30 seconds at the start, Judge. Sure. Of course. That's fine. Thank you, Your Honor. Mr. Boe? You're on mute. All right. I'm unmuted. Thank you. Can you hear me, everyone? Yes. All right. Thank you. There is no takings here. First of all, the Nevada Supreme Court did decide what we call the Sataquai Bay Durango case, decided that there is no takings. They acknowledge there is state action in passing the statute. But both the Nevada Supreme Court and the Ninth Circuit have said that taking a foreclosure, which is authorized by statute, doesn't make it state. It's not done by a state actor. It's done by a private party. And even the Supreme Court in the Lugar case said that you can't do that because a private person will be subject to constitutional litigation every time they take a remedy which is afforded by state law. Here, the statute was passed in 1991. So it was on the books long before the bank took their interest in the property. The CC&Rs were recorded October 9, 2003, five years almost before Wells Fargo took their interest in the property. When the former owner acquired the property, he acquired it subject to the encumbrance of the CC&Rs. Wells Fargo acquired their interest in the property from the owner. So they also took subject to the CC&Rs. And at all times, they were on notice of the CC&Rs. There is no taking or destruction here. Okay, counsel, do you dispute, I mean, you just heard your friend say that until, I guess it was the SFR case in 2014, you know, until then, nobody had interpreted the statute, or there was no authoritative decision interpreting the statute to work like this, that there would be the super priority lien that would wipe out the mortgage. Did you agree with that characterization of the history? Not necessarily. And one matter is not on the record, and one is part of the record. The UCIOA has its own commentary where they comment and say that it's always been presumed that once they got served with the notice of foreclosure, that they would pay the six months, or the UCIOA says six months as opposed to Nevada has nine months. But it was assumed that they would pay the super priority portion of the lien and proceed with their own foreclosure. They didn't say, they didn't put on the extra couple words, pay the lien rather than have it lost to foreclosure. But when the statute says the nine months or the super priority is prior to the existing first deed of trust, and the commentary says they would pay it rather than allow it to go to foreclosure, that clearly means as interpreted by the UCIOA in the commentary after the SFR case, the original SFR case. So it was envisioned all along. That was the intent. The big complaint with the original SFR case in Nevada was whether or not the foreclosure sale could be done nonjudicially or had to be done judicially. If you read the original SFR case, that's a big part of the argument, whether or not due process was served here, and that the judicial foreclosure would have afforded better due process than the manner in which the statutes would allow with the nonjudicial foreclosure sale. How much did Mr. Carrasco purchase the property at issue in this lawsuit for? I am not certain. I do believe reading somewhere, and Mr. Jacobs could possibly correct me, but I think the original mortgage was about $203,000. And your client purchased the home for, I guess, just over $5,000, which is a fraction of the value of Wells Fargo's deed of trust here. So I guess my question is, how is this fair to Wells Fargo? That's a question that's been answered many times, even originally in the SFR case. Mind you, the deed of trust was issued in 2008 when property values were still climbing in Nevada. The foreclosure sale happened in 2013 after the market bust and property values declined. It's fair because Wells Fargo, because it is such a tiny mean, they had a simple remedy. All they had to do was pay it. In fact, they were only required to pay nine months, but the original SFR decision says they have many options available. They can pay the lien in full and sue for a refund. They can pay the nine months. If they're uncertain, they can file a lawsuit but don't spend it on the property, get an injunction, file an act to determine what the lien amount is, and preserve their interest as is envisioned by the UCIOA. But one of their arguments is that, the way I interpret it, that's very confusing. They really didn't know the amount because they were given the full amount instead of just the super lien amount. What's your response to that? Well, the Nevada Supreme Court addressed that in the original SFR case, and they said they had their remedies. There's nothing stopping them from determining what the super priority amount was. If there was a problem in determining what it was, they had the option of paying this lien. Council keeps talking, this is a tiny lien. It's a very small lien. It's an insignificant lien wiping out this, and they've been making this argument now for nine, ten years. Why didn't the HOA choose to just tell them the amount of the super lien amount? Why did it choose to notify Wells Fargo of the total amount of this lien? I cannot speak for the HOA or what they did. They are not my client. But the Nevada Supreme Court in the SFR case said the fact that they had the opportunity to learn it by themselves, and that was the amount of the super priority lien was subject to conflict within the Nevada state court system, which was decided in the ICON case, I believe, two years ago. And then the ability to pay and how to pay and how much to pay has also been a lot of litigation for that, which was decided in what we call the Diamond Spur decision and spoken about by this court in the Arlene and Twilight decision. But they always had their remedies available to them, and just to sit on their hands and do absolutely nothing, they cannot come to this court now and ask for equity and ask to have the sale set aside. I guess one of the outstanding questions for me is if the notice of sale did not specify the super priority portion of the lien, how is Wells Fargo supposed to protect the interest in its property? Again, because counsel calls this a tiny lien, mind you, when the notice of assessment lien is recorded, it's one amount. The assessment lien is recorded April 2011. Now, by statute, they're not entitled to notice of the assessment lien, but when the notice of default is recorded, that was May 23rd, 2011, it's required to be mailed to everyone with an interest in the property. And that was May of 2011. The notice of sale was not recorded for another 18 months until December 21st, 2012. And I don't have the records before me to show what the lien amounts were, but the lien amounts continue to grow. And by the time it went to foreclosure sale, it was only $5,300. It was substantially less at the time the notice of default was recorded. Had they been proactive, had they made some phone calls, had they sent some letters, had they sent the check, we wouldn't be here talking about this today. They would have preserved their interest in the real property, but they failed to do so. And a basic tenet of equity, and they're asking for equity, is you can't sit in your hands, wait for an event to happen, and ask the court to wind up. Can you address the Armstrong case, which Wells Fargo relies on, which seems to stand for the proposition that at least some of the time, when you have a legal regime that wipes out an earlier lien, that can be a taking. So how do you distinguish that? In this case, it's not a taking because the statute one was in existence prior to the sale. And I have to be honest, I read the Armstrong case. I didn't study it very hard, very much for this argument here. But I'm relying on the Sadecoy Durango case, which is the state court interpretation of the statute, which, with all respect, is binding on the Ninth Circuit here, because it's the state court interpretation of the state law. So I apologize. You know, there's been literally over 100 cases cited in these briefs, and I've read what I could prepare for this morning. That's the one I didn't think was that important. All right. Thank you. And the other, I'm just going to say, a number of the cases that do cite are in the domain cases or statutes that were passed after an entity had already had their interest in the property. Here, Wells Fargo always took subject to the existing CCNRs, and at all times they knew that they would be subject to potential liens on the property. Thank you. Thank you, Mr. Bohm. Mr. Jacobs, I'll give you two minutes. Thank you, Your Honor. Well, if you honor Matthews v. Eldridge here, you will reverse. This is not some handout asking for equity. The Nevada Supreme Court ignored Matthews v. Eldridge, and it's exactly why the notice is inadequate to the point of your question, Judge Merguia. There are three prongs in that test. The third prong as to whether a notice is adequate under Matthews v. Eldridge is the government interest, including any additional burden from any additional requirements. The Nevada Supreme Court says, go figure it out yourself. I don't care about telling you the right amount. But the right answer is there was no additional burden on the government. As Nevada legislature demonstrated when it fixed the statute, all the Matthews factors point to this working an unfair surprise. Was there a risk of erroneous deprivation, the second factor? We've been litigating 3,000 houses for six years. There was a vast turn of erroneous deprivation and a huge risk because no one knew. Your Honor has asked counsel whether there were cases before SFR. In 23 years, he doesn't have one to cite to you. But let me ask you, Mr. Jacobs, though, if you had actual notice of the sale, why didn't you just, why didn't Ubos Fargo just pay the HOA's lien in order to protect its property? First of all, because the bank in general doesn't have actual notice of these things. My prior answer was Nevada law tells me that we're supposed to act like we have notice. It was not clear in Bourne Valley. It's not clear in most of the cases whether you have notice. The thing itself, the thing they send you just says that the homeowner may lose the home. It doesn't state an amount. It doesn't reference Wells Fargo. That's the whole point of the as-applied due process argument. Matthews versus Eldridge, it's not calculated to actually tell us. So Nevada tells you we got that. But if you read the four corners of what we got under NRS 116, it's a thing that if you got it and you're a bank, you don't know they're taking that house away. That's the four corners of the statute. It's also a motion to dismiss. They don't even put in evidence the actual notices. They just say Wells Fargo's well-pleaded allegation that it didn't receive actual notice is 12B6 material. They don't have an adequate response to that issue either. That's why Judge McGee, it should be reversed as well. Matthews versus Eldridge, Judge Miller-Armstrong is the most important case in the entire regime. The regime of the taking was completed before Ms. Loretto even bought the New York apartment building. The temporal thing that they're selling is a dog that does not hunt. It goes against Armstrong. It goes against Loretto. It does violence to the Fifth Amendment. Please honor the takings clause, and we've set out the basis in our brief as to why the Nevada Supreme Court was wrong, Your Honors. Thank you. Judge Stee, do you have any questions for the counsel? No, thank you. Judge Miller, do you have any other questions? No, thank you. Thank you, Mr. Bone, Mr. Jacobs. We appreciate it. Thank you for having to deal with the technical difficulties. We apologize for that. We're doing the best we can. We really wanted to hear oral argument in this case and appreciate your appearances here today. The case of Wells Fargo versus Mahogany Meadows Avenue Trust, case number 18-17320 is now submitted. Thank you. Thank you very much.
judges: Murguia, Steeh, Miller